FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 8 2001

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

1 THOMAS T. BASSETT
  ANGEL D. RAINS
2 LUKINS & ANNIS, P.S.
  1600 Washington Trust Financial Center
3 717 W Sprague Ave.
  Spokane, WA  99201-0466
4 (509) 455-9555

5
  Attorneys for Plaintiff
6 BOSLEY MEDICAL GROUP

7

8        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF WASHINGTON
9

10 BOSLEY MEDICAL GROUP, a          CS-01-0070-EFS
11 California corporation,
                                    NO.
12              Plaintiff,
                                    COMPLAINT FOR INJUNCTIVE
13      v.                          RELIEF AND DAMAGES FOR
                                    BREACH OF CONTRACT AND
14 DUNCAN R. BROWN, M.D., P.S., a   VIOLATION OF THE UNIFORM
15 Washington professional service  TRADE SECRETS ACT
   corporation; and DUNCAN R. BROWN,
16 M.D. and JANE DOE BROWN, husband
   and wife,
17
                Defendants.
18
19      BOSLEY MEDICAL GROUP, alleges:

20                  I. **PARTIES**

21      1.1    Plaintiff, Bosley Medical Group (hereinafter "BMG") is a California

22 corporation with its principal place of business in Beverly Hills, California.

23      1.2    Duncan R. Brown, M.D., is a Washington professional corporation

24
25 (hereafter "Duncan R. Brown, M.D.") doing business in Spokane County.

26

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 1

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

1.3    Duncan R. Brown, M.D., and Jane Doe Brown (hereinafter "Dr. Brown") are believed to be residents of the city and county of Spokane, Washington, and are husband and wife. All acts alleged done by Dr. Brown, were performed for and on behalf of the marital community of Duncan and Jane Doe Brown.

1.4    Duncan R. Brown, M.D., is wholly owned and controlled by Dr. Brown and acts as Dr. Brown's agent. Duncan R. Brown, M.D., is liable to the plaintiff to the extent it acts as the agent of Dr. Brown in violation of agreements executed by Dr. Brown and the plaintiff and as necessary to provide complete injunctive relief.

## II.  JURISDICTION AND VENUE

2.1    This is an action for breach of contract. Jurisdiction is based on 28 U.S.C. § 1332. Plaintiff is a resident of California; the defendants are residents of Washington; and plaintiff seeks damages in excess of Seventy-five Thousand Dollars ($75,000.00).

2.2    Venue is proper pursuant to 28 U.S.C. § 1391(a) in the Eastern District of Washington because the defendants reside in the Eastern District and a substantial part of defendant's acts occurred in the Eastern District of Washington.

## III.  FACTS

3.1    BMG is engaged in the specialized medical practice of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures. Bosley Medical Institute, a Delaware corporation, is an affiliate of BMG and maintains an office in Spokane County, Washington.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 2

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE
SPOKANE, WA 99201-0466
(509) 455-9555

3.2    BMG has developed and advanced the technical and aesthetic aspects of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, and hairline design techniques.

3.3    The business and patients of BMG comprise a substantial part of the goodwill of BMG.

3.4    As of January 1, 1999, the defendant, Dr. Brown, entered into an Independent Contractor Agreement with BMG.  Prior to that time, the defendant entered into a Consultation Agreement with Bosley Medical Group, a California corporation, as of September 19, 1994 (the "Agreements").  Copies of the Agreements are attached hereto as Exhibits "A" and "B", respectively.

3.5    The Agreements specifically provide that defendant, Dr. Brown, may freely practice any type of medicine anywhere, excepting only the extremely limited field of hair transplantation in BMG's geographical marketing areas.

3.6    Pursuant to the Agreements, defendant, Dr. Brown, was an independent contractor and not an employee of BMG.

3.7    Among other things, the Agreements contain a non-competition clause.  This non-competition clause was designed to permit Dr. Brown to continue his medical practice after the disassociation of defendant from BMG while protecting the rights of BMG to its patients and existing business.

3.8    The defendant, Dr. Brown, disassociated from BMG on or about September 2, 2000.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 3

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

3.9    The defendant, Dr. Brown, agreed that upon termination of the Independent Contractor Agreement, for any reason, or upon the disassociation of Dr. Brown and BMG, and for a period of two years thereafter, Dr. Brown would not directly or indirectly compete with BMG, or any of its affiliates, whether as a principal, partner, employee, or any other capacity, in hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, within the geographic marketing areas of BMG and its affiliates, namely, any California county or any county in any other state, in which BMG (or its successor, parent, subsidiary, or affiliate) then maintains an office.

3.10    The defendant, Dr. Brown, recognized and agreed that in the event of a breach or threatened breach by him, BMG would suffer irreparable injury for which monetary damages may not adequately compensate BMG. Dr. Brown further agreed that an injunction should issue restraining such breaches or threatened breaches. Further, Dr. Brown agreed that the plaintiff's remedies shall be cumulative and shall be in addition to BMG's right to recover damages for the loss of, on average, no less than twenty percent (20%) of the fees derived from the hair restoration patients handled by Dr. Brown during the two-year period following Dr. Brown's disassociation from BMG.

3.11    The defendant, Dr. Brown, recognized and agreed by signing the Agreements that BMG developed and advanced the technical and aesthetic aspects of hair transplantation and related procedures and that it would be difficult or impossible

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 4

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

for other physicians, such as Dr. Brown, to discover the procedures, techniques and aesthetic guidelines utilized and advanced by BMG.

3.12   The defendant, Dr. Brown, recognized and agreed that in the course of his affiliation with BMG under the Agreements, he would have access to confidential and valuable information regarding the business, aspects of a medical hair restoration practice, including BMG's policies and procedures, manuals, advertising formats and strategies, and other non-medical systems.

3.13   The defendant, Dr. Brown, agreed that the information to be provided by BMG under the Agreements, including the names and addresses of BMG's patients, was to remain the property of BMG and a trade secret of BMG.  Further, that upon termination of the Agreements for any reason whatsoever, whether by breach of the Agreements or otherwise, Dr. Brown agreed to maintain all such information in the strictest confidence and to return to BMG all copies, documents, programs, and the like, containing such confidential information.

3.14   The defendant, Dr. Brown, agreed that for one year after the termination of the Agreements, the defendants would not hire or otherwise solicit for employment any BMG personnel.

## IV.  FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

4.1   The defendant, Dr. Brown, has violated the Agreements by directly competing with BMG in Spokane, soliciting BMG's personnel, contacting either

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 5

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE
SPOKANE, WA 99201-0466
(509) 455-9555

1  directly or indirectly BMG's patients, using or referencing BMG in advertising and

2  using the trade secrets of BMG.

3      4.2    Defendant, Dr. Brown, breached the Agreements by contacting and

4  soliciting patients of BMG.

5      4.3    As a direct and proximate and foreseeable result of the willful and

6

7  intentional breach of the Agreements, BMG has suffered irreparable injury and will

8  continue to suffer irreparable injury, including, but not limited to, damage to its

9  business goodwill, loss of referrals, loss of income, actual and consequential damages,

10 monetary losses, and lost profits in an amount to be proved at time of trial.

11

12

## V.  SECOND CAUSE OF ACTION
## BREACH OF DUTY OF LOYALTY AND GOOD FAITH

13     5.1    Defendant, Dr. Brown, while an independent contractor of BMG, acted

14 contrary to the interest of BMG by contacting or directing others to contact patients

15 with the intent of taking those patients with him when he left BMG.

16

17     5.2    Dr. Brown's actions are an intentional and wrongful breach of his duty of

18 good faith and loyalty to BMG and breach of the duty of good faith and fair dealing

19 inherent in all contracts.

20     5.3    The conduct of the defendant, Dr. Brown, has resulted in actual damages

21 to plaintiff in an amount to be proven at trial.

22

23

24

25

26

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 6

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE
SPOKANE, WA 99201-0466
(509) 455-9555

\\SPOKANE1\VOL2\16DOC\PMVS5DV-TTB-BOSLEY - COMPLAINT.DOC 3/8/01

1

2

## VI. THIRD CAUSE OF ACTION
## VIOLATION OF TRADE SECRETS

3

4

6.1     The information concerning BMG's patients and procedures constitutes trade secrets as that term is defined in the Uniform Trade Secrets Act, RCW 19.108, et seq.

5

6

7

6.2     Defendants have misappropriated trade secrets in violation of the Uniform Trade Secrets Act.

8

9

6.3     Defendants threaten to continue to misappropriate trade secrets in the future.

10

11

6.4     BMG is entitled to an injunction against the defendants prohibiting further misappropriation pursuant to RCW 19.108.020.

12

13

14

6.5     BMG is entitled to costs and attorneys fees for misappropriation of trade secrets in an amount to be shown at trial pursuant to RCW 19.108.040.

15

16

17

## VII. REQUEST FOR INJUNCTIVE RELIEF

18

19

7.1     Defendants have violated and threaten to continue to violate the terms of the Agreements prohibiting contact with BMG patients and competing in Spokane County.

20

21

22

7.2     Defendants have misappropriated and threaten to continue to misappropriate trade secrets belonging to BMG.

23

24

25

26

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 7

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

\\SPOKANE1\VOL2\16DOC\PMVS5DV-TTB-BOSLEY - COMPLAINT.DOC 3/8/01

1    7.3    The conduct of defendants has caused and threatens to cause immediate

2    and irreparable harm including, but not limited to, damage to goodwill and patient

3    relationships.

4    7.4    BMG therefore asks for injunctive relief pursuant to contract, Federal

5    Rule of Civil Procedure 65, and RCW 19.108.020.

6

7    WHEREFORE, having fully set forth the causes of action, plaintiff prays for

8    relief as follows:

9    1.    For preliminary and permanent injunctive relief enjoining the defendants

10   from directly or indirectly soliciting patients of BMG or performing any services

11   included in the BMG business, for any BMG patients.

12

13   2.    For preliminary and permanent injunctive relief enjoining the defendants

14   from directly or indirectly competing with BMG, or any of its affiliates, whether as a

15   principal, partner, employee, or any other capacity, in hair restoration, including but

16   not limited to hair transplantation and scalp reduction and related procedures, within

17   the geographic marketing areas of BMG and its affiliates, namely, any California

18   county, or any other county in any other state, in which BMG (or its successor, parent,

19   subsidiary, or affiliate) then maintains an office, including Spokane County,

20   Washington.

21

22   3.    For judgment against the defendants for monetary damages in an amount

23   to be proved at trial.

24   4.    For pre-judgment interest.

25   5.    For costs and attorneys fees pursuant to RCW 19.108.040.

26

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT:  8

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICES CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

6.    For such other and further relief as the Court may deem just and equitable.

DATED this 8th day of March, 2001.

LUKINS & ANNIS, P.S.

By _____
THOMAS T. BASSETT,
WSBA #07244
ANGEL D. RAINS
WSBA #28466
Attorneys for Plaintiff

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES FOR BREACH OF CONTRACT: 9

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE
SPOKANE, WA 99201-0466
(509) 455-9555

## INDEPENDENT CONTRACTOR AGREEMENT

### [Medical and Surgical Treatment]

THIS AGREEMENT, made as of January 1, 1999, is made by and between BOSLEY MEDICAL GROUP (hereinafter "BMG") and DUNCAN BROWN, M.D., A MEDICAL CORPORATION (hereinafter "CONTRACTOR"), and is made with reference to the following facts:

1. BMG and CONTRACTOR are professional corporations.

2. L. Lee Bosley, M.D. is the president and director of BMG, and is a physician and surgeon licensed by the State of California and other states.

3. Duncan Brown, M.D. (hereinafter referred to as "PHYSICIAN" or as "CONTRACTOR's PHYSICIAN") is the president and director of CONTRACTOR, and is a physician and surgeon licensed by the State of California, and other states. PHYSICIAN has practiced in the field of plastic and reconstructive surgery and is board certified in plastic surgery. Prior to affiliating with BMG neither CONTRACTOR nor CONTRACTOR's PHYSICIAN had any experience in hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures; both CONTRACTOR and CONTRACTOR'S PHYSICIAN wished to become skilled in those and other cosmetic areas. Both CONTRACTOR and CONTRACTOR'S PHYSICIAN recognize that extensive training and experience in those areas has been obtained at BMG and that such training was and is fairly worth the sum of $200,000.

Initial _____   1      Initial _____

4.  Since August 1, 1974, BMG (and, for more than twenty-five years, L. Lee Bosley, M.D.) has been engaged in the highly specialized medical practice of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures.

5.  BMG and its affiliates have acquired their patients and have developed a national and international reputation, and are still acquiring their patients and maintaining a national and international reputation, at great expense (since 1974, more than the sum of $6,000,000) by means of local, regional and national advertising, as well as by direct contacts, referrals and other means.  It would be difficult, if not impossible, for other physicians to discover the names of BMG's patients and prospective patients, and the business and advertising concepts and strategies discovered by or successfully utilized by BMG, to the continuing benefit of BMG, its affiliates, its patients and prospective patients, and the physicians associated with BMG.

6.  CONTRACTOR and PHYSICIAN acknowledge that they have examined and approved the form and content of BMG's advertising, including BMG's patient brochure, media advertising and patient response package, and consent to the use by BMG and its affiliates of the image, name, experience and biographical data of PHYSICIAN.

7.  At great expense of time and money BMG has developed and advanced the technical and aesthetic aspects of hair restoration, including but not limited to hair transplantation and scalp

Initial _____          2          Initial _____

reduction and related procedures, and hairline design techniques, and continues to maintain high standards with respect to those procedures and techniques.   It would be difficult, if not impossible, for other physicians to discover the procedures, techniques and aesthetic guidelines utilized by BMG, to the continuing benefit of BMG, its affiliates, its patients and prospective patients, and the physicians associated with BMG.

8.   The parties are desirous of entering into a professional and business relationship for the care and treatment of BMG's patients.

9.   In the course of CONTRACTOR's association with BMG, it will be necessary for BMG to invest substantial time and money in training and monitoring the work of PHYSICIAN, so that he may learn and master the procedures, techniques and aesthetic guidelines utilized by BMG.   BMG would not invest in such training unless CONTRACTOR and PHYSICIAN had given and was willing to give written and oral assurances that they would not use the skills, experience and knowledge acquired at BMG to directly or indirectly compete with BMG, or any of its affiliates, in hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, within the geographic marketing areas of BMG and its affiliates, namely, any California county, or any county in any other state, in which BMG (or its successor, parent, subsidiary, or affiliate) then maintains an office.   BMG and its affiliates presently maintain offices in Beverly Hills, La Jolla, Newport Beach, Palm Desert, Sacramento, San Bernadino, Santa Clara

Initial  _____                    3                    Initial  _____

and San Francisco in the State of California, in Seattle in the State of Washington, in Dallas and Houston in the State of Texas, in Atlanta in the State of Georgia, in Chicago in the State of Illinois, in Boston in the State of Massachusetts, near Detroit in the State of Michigan, near Cleveland in the State of Ohio, in Philadelphia and Pittsburgh in the State of Pennsylvania, near Indianapolis in the State of Indiana, near St. Louis in the State of Missouri, near Minneapolis in the State of Minnesota, in Charlotte in the State of North Carolina, in Boca Raton, Jacksonville, Miami, Tampa and Orlando in the State of Florida, in Las Vegas in the State of Nevada, in New York City, Rochester and Long Island in the State of New York, in Nashville in the State of Tennessee, in Portland in the State of Oregon, in Washington, D.C., in New Orleans in the State of Louisiana, in Providence in the State of Rhode Island, and in Toronto, Ontario [Canada].   Were CONTRACTOR or PHYSICIAN to leave BMG and compete with BMG or its affiliates in the marketing areas of BMG or its affiliates, the parties estimate in good faith (it being difficult or impossible to establish precisely) that, on the average, no less than 20% of the fees derived from their hair restoration patients for a two year period would have come to BMG or its affiliates absent their competition.

10.   CONTRACTOR and PHYSICIAN acknowledge that: (a) in 1980 and 1983, L. Lee Bosley, M.D., entered into consent decrees with the Medical Board of California; (b) in 1996, L. Lee Bosley, Bosley Medical Group and Bosley Medical Institute entered into a consent decree with the Office of the Los Angeles County District Attorney;

Initial ⟩𝓍𝓁          4          Initial 𝒶𝒿

and (c) in 1997, the Medical Board of California filed an accusation against L. Lee Bosley, M.D.

11. By virtue of CONTRACTOR's relationship with BMG, CONTRACTOR and PHYSICIAN will be privy to certain information concerning the medical techniques, procedures and aesthetic guidelines utilized by BMG, and concerning the marketing, advertising, financing, earnings, expenses, and administration of BMG, including the terms of this agreement. Such information is not made available to anyone not associated with BMG and is not readily discoverable by anyone not associated with BMG. CONTRACTOR and PHYSICIAN acknowledge that such information is confidential and agree that such information will be held in confidence by CONTRACTOR and PHYSICIAN and not disclosed to anyone not associated with BMG (excepting CONTRACTOR's or PHYSICIAN's attorney or accountant, and PHYSICIAN's spouse, or to satisfy the requirements of medical associations), and that such information will not be utilized by CONTRACTOR or PHYSICIAN to directly or indirectly compete with BMG or its affiliates in hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, upon the disassociation of CONTRACTOR and BMG for any reason whatsoever.

12. The parties acknowledge that, upon CONTRACTOR's disassociation from BMG for any reason, CONTRACTOR or PHYSICIAN may freely practice any type of medicine anywhere excepting only the extremely limited field of hair restoration in the geographic marketing areas of BMG and its affiliates.

Initial _____                    5                    Initial _____

13.  CONTRACTOR and PHYSICIAN acknowledge that, in the event of their breach of this agreement, BMG will suffer irreparable injury, for which monetary damages may not be adequate compensation.

14.  The parties acknowledge that they are relying upon the factual representations and acknowledgments stated above and would not undertake a professional and business relationship were it not for those representations and acknowledgments.

NOW, THEREFORE, THE PARTIES AGREE:

15.  BMG hereby retains CONTRACTOR, and CONTRACTOR hereby agrees to be retained by BMG, on the terms and conditions of this agreement, effective as of January 1, 1999.  For purposes of determining the time periods set forth in paragraph 22, 23, 26, and in Addendum "A" this agreement shall be interpreted as though it had commenced on September 19, 1994.

16.  In order to insure orderly administration and good patient care, CONTRACTOR hereby agrees to notify BMG in writing (on the form attached hereto as ADDENDUM "B") no less than 45 days in advance, of PHYSICIAN's availability on a monthly basis for the rendition of medical, surgical and counseling services to BMG's patients and prospective patients.  For instance, CONTRACTOR shall notify BMG of PHYSICIAN's availability for the month of October no later than August 15th.  Such notice of availability shall state, for each month, the days of each week and the hours of each day

Initial _____                    6                    Initial _____

when PHYSICIAN will be available for the scheduling of appointments and procedures at BMG, and will also state the days of each week PHYSICIAN will not be available to render such services to BMG's patients.  Unless BMG agrees otherwise, and except in the event of an emergency, PHYSICIAN hereby agrees to be available for the rendition of such services to BMG's patients on the date and at the times stated in CONTRACTOR's notice of availability in accordance with BMG's needs.  If this agreement is terminated under paragraph 22, then such termination supersedes this notification.

17.  CONTRACTOR and PHYSICIAN acknowledge that PHYSICIAN may be required to render services to BMG's patients at BMG offices (or those of BMG's affiliates) other than CONTRACTOR's primary office, in order to cover for vacations, illnesses or other physician absences.  Moreover, in its sole discretion, BMG shall retain the right to designate or redesignate CONTRACTOR's primary office in accordance with BMG's needs, or BMG's affiliates needs, from time to time.

18.  As an independent contractor CONTRACTOR is free to render medical services and to allocate the time, energies and expertise of PHYSICIAN, provided such services or such allocation of activities do not otherwise violate the provisions of this agreement, and provided that any services rendered other than under this agreement are not performed at BMG and do not involve hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures.  If PHYSICIAN's medical judgement and the dictates of good medical practice so indicate,

Initial _____        7        Initial _____

CONTRACTOR is free to call in such consultants and to utilize such facilities as the needs of BMG's patients require. Under no conditions will CONTRACTOR's employees be considered to be or deemed to be employees of BMG or be entitled to the rights or have the duties of employees of BMG.

19. CONTRACTOR and PHYSICIAN warrant and agree: (a) that CONTRACTOR and PHYSICIAN shall at all times be licensed and otherwise qualified to render the services required under this agreement; (b) that CONTRACTOR will not designate a physician other than PHYSICIAN to perform required services for BMG without prior written consent of BMG; (c) that the services covered herein are not assignable by CONTRACTOR; and (d) that, with respect to the states in which BMG's affiliates operate or open offices, CONTRACTOR shall at all times utilize best efforts to acquire and maintain eligibility for PHYSICIAN's licensing by reciprocity by utilizing one or more of the following means, annually if necessary: by maintaining a current re-certification with the American Board of Surgery, by qualifying through the SPEX exam, the FLEX exam, the applicable National Boards or applicable state boards.

20. During the term of this agreement, and without BMG's prior written consent, neither CONTRACTOR nor PHYSICIAN will render any medical, surgical or counseling services to any person, firm or entity, other than BMG and BMG's patients and prospective patients, with respect to hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures.

Initial _____                    8                    Initial _____

Otherwise, CONTRACTOR and PHYSICIAN are free to perform other medical and/or surgical services for anyone so long as the performance of such outside services does not interfere with the rendition of the services contracted for hereunder, and specifically, so long as such services are not performed at BMG and do not involve hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures.

21. In order to provide BMG and its patients and prospective patients with the best possible counseling and medical care with respect to hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, CONTRACTOR and PHYSICIAN agree to observe the rules and standards from time to time adopted by BMG (or its affiliates) relative to: (a) the care and treatment of BMG's patients; (b) the maintenance and operations of BMG's offices and other facilities; (c) BMG's billing, accounting and bookkeeping procedures; and, (d) BMG's advertising. Otherwise, CONTRACTOR has the right to control, and discretion as to the manner in which the services contracted for hereunder are performed.

22. This agreement shall be binding for a period of one year and shall renew for additional one year periods upon the same terms and conditions (a) unless the agreement is renegotiated by the parties at or about that time, or (b) unless the agreement is otherwise terminated by any of the following ways:

Initial _____                    9                    Initial _____

A.    Immediately upon the death or permanent disability (i.e., the permanent inability to practice surgery anywhere) of PHYSICIAN, or upon the breach of this agreement by CONTRACTOR or PHYSICIAN.

B.    By BMG or by CONTRACTOR, on three days written notice, with or without cause.

C.    However, if CONTRACTOR gives less than four months written notice of termination, CONTRACTOR shall reimburse BMG (or at BMG's option, BMG may offset from amounts due CONTRACTOR) for the actual itemized costs incurred or to be incurred by BMG for the alteration or reworking of advertising and office and video materials to reflect the disassociation of CONTRACTOR.    In any event, BMG reserves the right and discretion to change any of its advertising materials to reflect the disassociation of CONTRACTOR.

D.    Moreover, if, for any reason, CONTRACTOR's affiliation with BMG and its affiliates terminates, CONTRACTOR and PHYSICIAN shall be jointly and severally liable for, and shall pay BMG $200,000 for the training received at BMG, but shall not be obligated to pay 10% of that amount after the first full year of affiliation CONTRACTOR completes under this contract and prior contracts.    An additional 20% shall be forgiven after the second full year; an additional 30% shall be forgiven after the third full year; and, the remaining 40% shall be forgiven after the fourth full year.    CONTRACTOR and PHYSICIAN shall be excused from this obligation: (a) if PHYSICIAN dies or becomes permanently disabled

Initial _____                    10                    Initial _____

(i.e., the permanent inability to practice surgery anywhere); (b) if BMG terminates this contract without cause; or (c) if BMG fails or, in fact, goes out of business. However, if CONTRACTOR or PHYSICIAN is excused from the obligation to pay for training because of permanent disability and thereafter returns to or reopens a medical practice, CONTRACTOR and PHYSICIAN shall once again become liable to pay for the training in accordance with the above terms and conditions.

23. During the term of this agreement, BMG will compensate CONTRACTOR for services, in accordance with ADDENDUM "A" attached hereto and incorporated herein by this reference. In addition:

A. The amounts from time to time received by BMG in connection with CONTRACTOR's services shall be referred to as "Charges". The amounts remaining after making the adjustments described in this paragraph (23) shall be referred to as "Adjusted Charges". The amounts due to CONTRACTOR from BMG in connection with CONTRACTOR's services shall be referred to as CONTRACTOR's fees.

B. CONTRACTOR shall receive no portion of amounts paid to BMG with regard to medications, drugs and laboratory services.

C. CONTRACTOR shall not receive any payments with respect to procedures performed by PHYSICIAN if the patient is not required to pay BMG for those procedures. Likewise, CONTRACTOR's fees shall be reduced in proportion to any reductions or credits

Initial _____        11        Initial _____

given, in BMG's absolute discretion, to BMG's patients treated by PHYSICIAN. CONTRACTOR further agrees to reimburse BMG (or, at its option, BMG may offset against any amounts due CONTRACTOR) for any refunds or credits to patients treated by PHYSICIAN, made after the time of payments to CONTRACTOR with respect to the services in question, whether or not CONTRACTOR is still associated with BMG. BMG shall have the absolute discretion to give or not to give any such refund or credit, and to determine CONTRACTOR's share of any such refund or credit.

D.   Whenever a patient travels to a BMG facility and is further allowed an airfare refund against BMG's charges for services rendered by CONTRACTOR at the time of the patient's visit, CONTRACTOR's fees shall be reduced proportionately. Whenever, in addition    to    CONTRACTOR's    services,    one    or    more physician/contractors provide some of the services rendered to a patient at the time of that patient's visit, the dollar amount of the patient's airfare refund shall be split in proportion to the dollar amount of BMG's charges for services rendered by each physician/contractor including CONTRACTOR.    The reduction of CONTRACTOR's fees in connection with a patient's airfare refunds shall be based upon the portion of the patient's airfare refund which corresponds to BMG's charges for CONTRACTOR's services.

E.   Payment for services shall, in the normal course, be made by BMG as soon as practicable but in no event later than the 25th day of the calendar month following the month in which the patient care was rendered by CONTRACTOR.

Initial _____          12          Initial _____

24.  CONTRACTOR is an independent contractor.

A.    As such CONTRACTOR is solely responsible for any and all liability or malpractice arising out of the counseling, medical and surgical care rendered by PHYSICIAN, or its employees, agents, and any personnel under its direct control or supervision. CONTRACTOR agrees to purchase and maintain adequate malpractice insurance coverage (at least $1,000,000 per occurrence and $3,000,000 aggregate) and adequate liability insurance coverage (if necessary) for itself, its employees and agents, in accordance with BMG's requirements from time to time.  CONTRACTOR acknowledges that this requirement includes making arrangements for adequate malpractice insurance coverage and, if necessary, adequate liability insurance coverage with respect to PHYSICIAN's rendition of medical services at all BMG facilities or affiliated facilities, whether located inside or outside of California.   This means CONTRACTOR shall maintain adequate malpractice insurance coverage, as defined above, in its "home-base" state and shall utilize best efforts to maintain PHYSICIAN's on-going eligibility for adequate "locum tenens" malpractice insurance coverage in all other states where BMG's affiliates have facilities.  Upon disassociation from BMG for any reason whatsoever, CONTRACTOR and PHYSICIAN agree to purchase and maintain medical malpractice "tail coverage" insurance for a period of at least three (3) years for the benefit of BMG, CONTRACTOR and PHYSICIAN, their employees and agents, and to submit satisfactory written proof thereof to BMG within twenty days (20) after disassociation; if CONTRACTOR fails to do so, BMG may purchase such coverage and CONTRACTOR and PHYSICIAN agree to

Initial _____          13          Initial _____

reimburse the costs incurred to BMG. At BMG's sole option, BMG may offset the costs against any amounts otherwise due to CONTRACTOR. In the event any claim is made or lawsuit filed against BMG, its affiliates, their employees or agents, by anyone in which it is contended that CONTRACTOR or PHYSICIAN is or was in any way responsible or at fault, BMG shall have the exclusive right, at its sole option and discretion, to compromise or settle said claim or lawsuit with respect to the interests of BMG, its affiliates, their agents and employees, without consulting with or seeking the approval of CONTRACTOR or PHYSICIAN. If CONTRACTOR or PHYSICIAN desire to be released in any such settlement, they may participate in such settlement provided they agree to pay and pay their pro rata shares of any settlement recovery paid.

B. CONTRACTOR agrees to fully indemnify and hold BMG and its affiliates, their employees and agents harmless from any and all claims, costs, damages, attorney's fees, or liability which may arise out of or result from the actions of CONTRACTOR, its employees, agents and any personnel under its direct control or supervision. CONTRACTOR shall promptly notify BMG in writing upon the occurrence of an event which may lead to such claims, etc., and upon the making of any such claim by anyone. Similarly, BMG agrees to indemnify and hold CONTRACTOR, its employees and agents harmless from any and all claims, etc., which may arise out of or result from the actions of BMG, its affiliates, their employees or agents, providing such employees or agents are not under the direct control or supervision of CONTRACTOR.

Initial _____        14        Initial _____

C.  CONTRACTOR shall indemnify and hold harmless BMG and its affiliates from and against any and all liabilities, claims, costs and expenses [including but not limited to insurance premiums which may be charged to BMG or its affiliates in connection with the fees paid to CONTRACTOR or in connection with salaries or wages paid to CONTRACTOR's employees] which may arise out of Workers Compensation laws, regulations or industry practices, in relation to or in connection with: (a) the services performed by CONTRACTOR or its employees; (b) the fees paid to CONTRACTOR by BMG; or (c) salaries or wages paid to CONTRACTOR's employees.  BMG and its affiliates shall have the right, at all times, to reasonably protect their interests by paying or advancing such sums as are necessary for that purpose [including but not limited to insurance premiums which may be charged in connection with the fees paid to CONTRACTOR or in connection with salaries or wages paid to CONTRACTOR's employees].  Any such sums paid or advanced by BMG or its affiliates shall be promptly reimbursed by CONTRACTOR; in the alternative, BMG shall have the right to offset such amounts against fees due to CONTRACTOR.

25.  As an independent contractor, CONTRACTOR shall pay its own taxes and expenses, including but not limited to, office rental, parking fees, the cost of CONTRACTOR's private telephone service, hospital and medical insurance, workmen's compensation insurance (which CONTRACTOR shall obtain and maintain), all travel and automobile expenses, including all room and board incurred while traveling, all educational and professional expenses, dues for membership in the American Medical Association, memberships in

Initial _____          15          Initial _____

state or local medical societies if required by professional liability insurance companies or desired by CONTRACTOR, whether or not such memberships are recommended or required with respect to CONTRACTOR's rendition of medical services at BMG facilities or those of its affiliates, and other memberships required or desired, entertainment expenses, business license taxes, income taxes and business personal property taxes, the cost of uniform coats, the cost of photocopying and framing for PHYSICIAN's licenses and certificates (up to 50 to 100 required), the costs of signage changes when joining or leaving BMG for the signs on BMG suite doors and on the door to CONTRACTOR's private office, the costs for a 35mm camera, camera lens and flash (camera, lens and flash will be specified by BMG), and all other expenses normally paid by independent contractors. Any such expense not paid on a timely basis by CONTRACTOR may, at BMG's sole option, be advanced by BMG. Such advances by BMG will be reimbursed by CONTRACTOR upon presentation of proof of payment by BMG. In the alternative, at BMG's sole option, BMG may offset such payments against amounts otherwise due to CONTRACTOR. In the event CONTRACTOR subleases office space from BMG or its affiliate, CONTRACTOR shall have access to that office space only during BMG's normal business hours and pay, on a pass-through basis, the same rate per square foot, and other costs and expenses, incurred by BMG for that office space; CONTRACTOR's sublease of that office space shall terminate at the same time and on the same terms as provided in paragraph 22, above.

Initial _____      16      Initial _____

26.  CONTRACTOR's PHYSICIAN must be licensed in California prior to affiliating with BMG; all costs of obtaining and/or renewing that California license shall be at CONTRACTOR's sole expense.  In addition to the California license, CONTRACTOR hereby agrees to expeditiously apply for and obtain PHYSICIAN's licensing in all other states in which BMG's affiliates maintain or open a surgical office and in which PHYSICIAN is not licensed to practice medicine.  After any such license is obtained, BMG will reimburse CONTRACTOR for documented costs associated with obtaining that license, up to a maximum of $1,000.00 (per state), provided CONTRACTOR is still affiliated with BMG at the time the license is obtained, and provided the license is obtained within nine months of the effective date of this agreement, or, with respect to an office planned for or opened in a new state after the first date written above, the license in that new state is obtained within nine months of the date of BMG's written notice to CONTRACTOR that it should proceed to apply for and to utilize best efforts to obtain such license.  All costs of renewing and maintaining those licenses shall be at CONTRACTOR's sole expense.

27.  During the term of this agreement BMG and its affiliates shall have the right to use and display the name, image, qualifications, and biographical data of CONTRACTOR's PHYSICIAN in marketing materials, advertising, patient information, office displays, and the like.

28.  With respect to BMG and its affiliates, all patient and prospective patient records and charts, as well as the names, and

Initial _____          17          Initial _____

addresses of all patients and prospective patients, are confidential and are the property of BMG and its affiliates and, at all times, subject to their exclusive control.  Information contained in a patient's records and charts will be provided to CONTRACTOR or PHYSICIAN, after termination of this agreement, only upon the patient's specific written request.  CONTRACTOR and PHYSICIAN acknowledge and agree that CONTRACTOR and PHYSICIAN may not and will not utilize any information regarding the patients or prospective patients of BMG or its affiliates, including their names and addresses, for any purpose except as necessary for the rendition of medical services by PHYSICIAN to those patients and then only for so long as CONTRACTOR is affiliated under the terms of this agreement.  CONTRACTOR and PHYSICIAN acknowledge that all such information is the exclusive property of BMG and its affiliates.

29. During the term of this agreement, upon termination of this agreement for any reason, or upon the disassociation of CONTRACTOR and BMG for any reason whatsoever, CONTRACTOR and PHYSICIAN agree not to directly or indirectly, for any reason whatsoever, divulge or use for gain or profit any of the confidential information concerning the medical techniques, procedures and aesthetic guidelines utilized by BMG or its affiliates, or concerning the marketing, advertising, financial affairs, earnings, expenses or administration of BMG or its affiliates, including the terms of this agreement.  The parties acknowledge that, upon CONTRACTOR's disassociation from BMG and its affiliates for any reason, CONTRACTOR and PHYSICIAN may freely

Initial _____        18        Initial _____

practice any type of medicine anywhere excepting only the extremely
limited field of hair restoration in the geographic marketing areas
defined below.

30.  Upon the termination of this agreement for any reason, or
upon the disassociation of CONTRACTOR and BMG (or BMG's affiliate),
and for a period of two years thereafter, CONTRACTOR and PHYSICIAN
shall not directly or indirectly compete with BMG, or any of its
affiliates, whether as principal, partner, employee, or any other
capacity, in hair restoration, including but not limited to hair
transplantation and scalp reduction and related procedures, within
the geographic marketing areas of BMG and its affiliates, namely,
any California county, or any county in any other state, in which
BMG (or its successor, parent, subsidiary, or affiliate) then
maintains an office.  BMG and its affiliates presently maintain
offices in Beverly Hills, La Jolla, Newport Beach, Palm Desert,
Sacramento, San Bernadino, Santa Clara and San Francisco in the
State of California, in Seattle in the State of Washington, in
Dallas and Houston in the State of Texas, in Atlanta in the State
of Georgia, in Chicago in the State of Illinois, in Boston in the
State of Massachusetts, near Detroit in the State of Michigan, near
Cleveland in the State of Ohio, in Philadelphia and Pittsburgh in
the State of Pennsylvania, near Indianapolis in the State of
Indiana, near St. Louis in the State of Missouri, near Minneapolis
in the State of Minnesota, in Charlotte in the State of North
Carolina, in Boca Raton, Jacksonville, Miami, Tampa and Orlando in
the State of Florida, in Las Vegas in the State of Nevada, in New
York City, Rochester and Long Island in the State of New York, in

Initial _____         19         Initial _____

Nashville in the State of Tennessee, in Portland in the State of Oregon, in Washington, D.C., in New Orleans in the State of Louisiana, in Providence in the State of Rhode Island, and in Toronto, Ontario [Canada].

31.  The parties agree that in the event of a breach or threatened breach of this agreement by CONTRACTOR or PHYSICIAN, BMG will suffer irreparable injury for which monetary damages may not adequately compensate BMG.  The parties further agree that an injunction should issue restraining such breaches or threatened breaches.  Such remedies shall be cumulative, and shall be in addition to any other remedies provided by law or equity, and shall be in addition to BMG's right to recover damages (as estimated, above, by the parties) for the loss of, on the average, no less than 20% of the fees derived from the hair restoration patients handled by CONTRACTOR or PHYSICIAN during the two year period following CONTRACTOR's disassociation from BMG.

32.  In the event any part or portion of this agreement is found to be void, invalid or unenforceable, the remaining provisions shall be binding on the parties as though the void, invalid or unenforceable part or portion were deleted.

33.  This agreement is made subject to the laws of the state(s) in which PHYSICIAN is practicing at the time of breach and shall be so interpreted.

Initial                     20                    Initial 

34.  In the event of any litigation under this agreement, the parties agree that the venue for such litigation shall be Los Angeles County, California.

35.  No amendment or modification of this agreement shall be effective unless evidenced by a writing signed by the parties.

36.  In the event of a breach of this agreement, or any litigation arising hereunder, each party shall pay its own costs, expenses, and attorney's fees.

37.  This agreement is assignable by BMG or by its parent, subsidiary or affiliate, but only by and among themselves.  In that event, CONTRACTOR's and PHYSICIAN's obligations hereunder shall not be diminished and shall be owed to the assignee.  Likewise, CONTRACTOR and PHYSICIAN shall look solely to the assignee for the performance of the assignor's obligations.

38.  Until otherwise indicated in writing, notices hereunder shall be sent to the parties as follows:

    A.    L. Lee Bosley, M.D.
          BOSLEY MEDICAL GROUP
          9100 Wilshire Boulevard, E. Tower PH
          Beverly Hills, California 90212

    B.    Duncan Brown, M.D.
          DUNCAN BROWN, M.D., A MEDICAL CORPORATION
          676 No. Michigan Avenue, Suite 3850
          Chicago, Illinois 60611

39.  Upon BMG's demand, each year CONTRACTOR's PHYSICIAN will submit to a complete and thorough physician examination, by an

Initial _____          21          Initial _____

outside physician designated by BMG, with reports to BMG.  BMG will reimburse CONTRACTOR for the documented costs for each such annual physical exam up to $1,000 or one half of those costs, whichever is less.

40.  BMG reserves the right, at its sole discretion, to offer CONTRACTOR eligibility in its Physicians' Financial Security Plan by which CONTRACTOR could, on certain terms and conditions, become the beneficiary of a cash award or lifetime annuity.

41.  CONTRACTOR and PHYSICIAN acknowledge that the terms of this agreement are confidential and may be revealed only to CONTRACTOR's accountant or attorney, and PHYSICIAN's spouse, or to satisfy the requirements of medical associations.

///
///
///
///
///
///
///
///
///
///
///

Initial _____          22          Initial _____

IN WITNESS WHEREOF, the parties have executed this agreement effective as of the first date appearing above.

BOSLEY MEDICAL GROUP                DUNCAN BROWN, M.D.,
a professional corporation          A MEDICAL CORPORATION

By: _L. Lee Bosley, M.D._          By: _Duncan Brown_

Its: _Prex_                        Its: _President_


PHYSICIAN

_Duncan Brown_
Duncan Brown, M.D.


Approved as to form and content:

_____
      Attorney For
CONTRACTOR and PHYSICIAN


Footnote: ADDENDUM "A" and ADDENDUM "B" are attached hereto.

23

## ADDENDUM "A"

During the term of this agreement, BMG will compensate CONTRACTOR for services, as follows:

A.   During the first three months of CONTRACTOR's association with BMG, BMG will pay CONTRACTOR $5,000.00 per month. During those three months, CONTRACTOR will pay all of its own expenses, including those set forth in paragraph 25 of this agreement.  During those three months CONTRACTOR's compensation shall be paid on the basis of a five and one half-day week, or prorated on that basis in accordance with CONTRACTOR's Notice of Availability for Scheduling.

B.   During the next one year (twelve months) of CONTRACTOR's association with BMG, BMG will pay CONTRACTOR five and one half (5.5%) percent of Adjusted Charges, as defined.

C.   During the next one year (twelve months) of CONTRACTOR's association with BMG, BMG will pay CONTRACTOR six and one quarter (6.25%) percent of Adjusted Charges, as defined.

D.   Similarly, and under the same conditions and restrictions, with respect to each succeeding year of CONTRACTOR's continuous association with BMG, the percentage of Adjusted Charges payable are as follows:

Initial _____        24        Initial _____

| YEAR | PERCENTAGE OF ADJUSTED CHARGES PAYABLE |
|------|----------------------------------------|
| 3    | 7.25%                                  |
| 4    | 7.25%                                  |
| 5    | 8.00%                                  |
| 6    | 8.50%                                  |
| 7    | 8.50%                                  |
| 8    | 8.50%                                  |
| 9    | 8.50%                                  |
| 10   | 9.50%                                  |

E.    With respect to each year after the tenth year of continuous association with BMG, the percentage shall be nine and a half (9.50%) percent.

F.    In addition, (after the first three months of CONTRACTOR's association with BMG) during some months PHYSICIAN may be required to travel to other BMG affiliated surgical offices in accordance with BMG's needs from time to time.  For such travel BMG will pay CONTRACTOR either:

(a)  seventy-five one hundredths (0.75%) percent of Adjusted Charges, as defined, in addition to any other compensation paid hereunder, for those months during which PHYSICIAN is approved by BMG for travel and licensed for some but not all BMG affiliated surgical offices outside California; or, one and fifty one hundredths (1.50%) percent (and not 0.75% percent) of Adjusted Charges, as defined, in addition to any other

Initial _____                    25                    Initial _____

compensation paid hereunder, for those months during which PHYSICIAN is licensed for and able to function in all BMG affiliated surgical offices in the United States of America; OR,

(b) a per diem travel stipend of $40 for food, along with the costs of travel and accommodations selected for PHYSICIAN by BMG, which travel costs shall not exceed the costs necessary for travel to or from a BMG affiliated surgical office not more than once every three weeks.

CONTRACTOR shall elect to be paid for travel either under subparagraph (a) or (b) and its election shall be binding for a period of one year. At its sole discretion and without waiving any rights hereunder, BMG may from time to time pay CONTRACTOR 1.50% percent of Adjusted Charges for travel even though PHYSICIAN is not licensed to render medical services in no more than one of the states outside California in which a BMG affiliate maintains a surgical office. In exercising its discretion BMG may consider, among other factors, the degree to which BMG's operations are hampered or constrained by the lack of the license in question.

G. In the event CONTRACTOR elects subparagraph F(a), above, PHYSICIAN hereby authorizes and directs BMG to disburse CONTRACTOR's travel compensation on the following terms:

1. From the pool comprised of the travel compensation of all affiliated physician/contractors, each contractor associated with BMG (or with BMG's affiliates), including CONTRACTOR, shall be paid $400 for each day that contractor's physician spends working in any BMG office (or BMG affiliate's office) other than that contractor's primary office

Initial _____        26        Initial _____

(hereinafter, a "travel day"). For cross-fertilization periods, each contractor shall be paid $500 for each day. A full week working in (or a cross-fertilization period lasting a full week in) any such office shall be treated as seven travel days. A full week shall mean Monday through Saturday; shorter periods shall be based upon actual travel days, as defined. In addition, the costs of locum tenens malpractice insurance coverage required by BMG or its affiliates shall be paid for said contractors, including CONTRACTOR.

2. The balance of CONTRACTOR's travel compensation, together with the balance of all other associated contractors' travel compensation, shall be distributed to CONTRACTOR and all other associated contractors in proportion to their entitlements under subparagraph F(a), above.

H. In addition, beginning on December 31, 1999 (and on December 31st of each year thereafter) CONTRACTOR shall receive an additional $48,000 in contingent CONTRACTOR's fees, over and above the amounts actually paid to CONTRACTOR for medical services rendered to BMG's patients during that year. However, the contingent CONTRACTOR's fees described above shall only be due and payable, and only paid in fact, provided CONTRACTOR is still associated with BMG on December 31st. If, for any reason, CONTRACTOR's association with BMG terminates prior to the 31st of December, 1999 (or prior to the 31st of December of any subsequent year), no contingent CONTRACTOR's fees shall be due or payable, or paid in fact, after the date of the termination of this agreement.

Initial _____                    27                    Initial _____

I.   For every month after the first three months of
CONTRACTOR's association, BMG's administrator (at his sole
discretion but in accordance with BMG's present accounting
practices, not subject to the second guessing by CONTRACTOR) will
determine the average monthly operating cost for BMG for the prior
six months, which will then be "in effect" for the current month.

1.   If BMG is operationally profitable:  If the net
charges for all of BMG and its affiliates (i.e., all patient gross
charges for hair restoration procedures less all patient fee
refunds, airfare and other refunds) for that month are equal to or
greater than the monthly operating cost amount in effect for that
month, then BMG will pay CONTRACTOR the entire amounts set forth in
paragraphs B, C, D, E, F and H, above.  After the first three
months of this contract BMG shall pay CONTRACTOR at least $120,000
on an annualized basis for the next 12 months, or the pro rata
amount of $120,000, such pro-ration being based upon a full-time
services schedule of 5 ½ days per week for the $120,000 per year.
The $120,000 shall be paid on the basis of $10,000 per month, to be
adjusted or offset in subsequent months if fees paid to CONTRACTOR
are greater than $10,000.  For example, if CONTRACTOR's fees amount
to $8,000 in a particular month, BMG shall pay CONTRACTOR $10,000;
and if for the next month CONTRACTOR's fees are $15,000, BMG shall
subtract the $2,000 paid over the $8,000 to bring the amount paid
in the first month to $10,000, and shall pay CONTRACTOR $13,000 the
following month.  The minimum of $120,000 for that year shall be
before any and all other expenses.  There shall be no minimum level
of fees after the one year period, except as set forth below.

Initial _____                28                Initial _____

2.   If BMG is not operationally profitable:  if the net charges for all of BMG and its affiliates for that month are less than the monthly operating cost amount in effect for that month, then, rather than the amount set forth in paragraphs B, C, D, E, F and H, above, BMG will pay CONTRACTOR the amount of $10,000, or three and one half (3.50%) percent of Adjusted Charges, as defined, whichever is greater.  If BMG establishes a new office after the date of this agreement, losses generated by that office will not be included in the monthly computation for the first six months of that office's operation.

J.   "Super Bonuses" -

1.   In addition to the above, for all months in which BMG is operationally profitable (as defined above), BMG will pay CONTRACTOR an additional six (6.00%) percent of the amount by which Adjusted Charges, as defined, exceed $1,920,000.  "Super Bonuses" will be estimated and paid on monthly basis and adjusted annually as of December 31st.

2.   "Super Bonuses" will not be paid for any month during which for any period of time there is only one affiliated surgeon working at a BMG surgical facility where normally there are at least two affiliated surgeons.  For example, currently the normal minimum number of affiliated surgeons for the three following BMG surgical facilities is:  Beverly Hills office, two; Chicago office, two; Philadelphia office, one.  If there were only one affiliated surgeon working in the Beverly Hills office during

Initial _____          29          Initial _____

any portion of March, then "Super Bonuses" would not be paid for any work done in the Beverly Hills office during March.

No other compensation of any kind shall be due or payable to CONTRACTOR during the term of this agreement.

IN WITNESS WHEREOF, the parties have executed this addendum effective as of the first date appearing in the agreement.

BOSLEY MEDICAL GROUP                DUNCAN BROWN, M.D.,
a professional corporation          A MEDICAL CORPORATION

By: _L. Lee Bosley, M.D._           By: _Duncan Brown_
Its: _Pres._                        Its: _President_


                                    PHYSICIAN
                                    _Duncan Brown_
                                    Duncan Brown, M.D.


Approved As To Form And Content:


By:_____
          Attorney for
CONTRACTOR and PHYSICIAN

30

# INDEPENDENT CONTRACTOR
## NOTIFICATION OF AVAILABILITY FOR
### BOSLEY MEDICAL GROUP

**TO:** **Independent Contractors Affiliated with BMG**

**RETURN TO: John R. Ohanesian, President**

The purpose of this program is to insure the most efficient scheduling of the independent contractors in the various BMG offices, which will be to the substantial benefit of not only the BMG patients, but also the independent contractors themselves.

The following calendar indicates the full-days or half-days for which I will definitely be available for scheduling. The full-days or half-days for which I will not be available for scheduling have been crossed out.

**MONTH:** _____  **YEAR:** _____

|    | SUN. | MON. | TUES. | WED. | THURS. | FRL | SAT. |
|----|------|------|-------|------|--------|-----|------|
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |
| AM |      |      |       |      |        |     |      |
| PM |      |      |       |      |        |     |      |

**SIGNED:** _____

**PRINT NAME:** _____

**DATE:** _____   [Addendum "B"]   jib 9/93

## CONSENT TO ACCOUNTING
## AND TRAVEL ELECTION

The undersigned ("Contractor"), as a party to that certain Independent Contractor Agreement dated January 1, 1999, by and between Bosley Medical Group and Contractor, hereby agrees as follows:

1. The Independent Contractor Agreement specifies that the Contractor has the obligation for making the following payments:

Office rental, parking fees, cost of camera and flash, uniform costs, costs of photocopying and framing of physician's licenses and certificates, costs of signage, and such other such expenses as are outlined in the Independent Contractor Agreement ("the Payments").

2. The Contractor hereby states that it will be a burden to perform the accounting and make the above type of payments. The Contractor hereby requests that the Bosley Medical Group handle the Payments by making the Payments directly to the appropriate parties and deducting the Payments from amounts due to the Contractor pursuant to the Independent Contractor Agreement, thereby relieving the Contractor from the above burden. Bosley Medical Group agrees to do so at no cost to Contractor.

3. The purpose of this agreement is merely to facilitate a more efficient accounting of the Payments. This consent does not amend or affect the terms and conditions of the Independent Contractor Agreement.

4. Finally, pursuant to paragraph F of Addendum "A" of the contract, Contractor hereby elects to be compensated for travel under subparagraph: F(a) _____ [or] F(b) _____ .

Dated: January 1, 1999

DUNCAN BROWN, M.D., A MED. CORP.

By: _____
Its: _____

Acknowledged:
Bosley Medical Group
a professional corporation

By: _____
Administrator

## CONSULTATION AGREEMENT

THIS AGREEMENT, made as of September 19, 1994, by and between BOSLEY MEDICAL GROUP, A Medical Group (hereinafter "BMG"), DUNCAN BROWN, M.D., and DUNCAN BROWN, M.D., A MEDICAL CORPORATION (hereinafter jointly and severally referred to as "PHYSICIAN"), is made with reference to the following facts:

A.    BMG is a California professional corporation.

B.    L. Lee Bosley, M.D. is the president and director of BMG, and is a physician and surgeon currently licensed by the state of California and other states.

C.    Since August 1, 1974, BMG (and, for more than twenty-five years, L. Lee Bosley, M.D.) has been engaged in the highly specialized medical practice of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures.

D.    BMG has acquired its patients and has developed a national and international reputation, and is still acquiring its patients and maintaining a national and international reputation, at great expense (since 1974, more than the sum of $6,000,000) by means of local, regional and national advertising, as well as by direct contacts, referrals and other means.  It would be difficult,

if not impossible, for other physicians to discover or successfully utilize the business and advertising concepts and strategies discovered by or successfully utilized by BMG.

     E.   At great expense of time and money BMG has developed and advanced the technical and aesthetic aspects of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures, and hairline design techniques, and continues to maintain high standards with respect to those procedures and techniques. It would be difficult, if not impossible, for other physicians to discover the procedures, techniques and aesthetic guidelines utilized by and advanced by BMG, to the continuing benefit of BMG, its patients, and the physicians associated with BMG.

     F.   PHYSICIAN is a physician and surgeon licensed by the state of California. PHYSICIAN has practiced in the fields of plastic and reconstructive surgery and is board certified in plastic surgery. In the course of his affiliation with BMG, PHYSICIAN will obtain extensive training and experience in the medical and surgical aspects of hair restoration, including but not limited to hair transplantation and scalp reduction and related procedures. To the extent that PHYSICIAN continues anywhere in a medical and/or surgical hair restoration practice (including but not limited to hair transplantation and scalp reduction and related procedures) after the termination of his affiliation with BMG,

Initial _Gms_         2         Initial _____

PHYSICIAN wishes to receive ongoing consultations in the medical and surgical aspects of hair restoration, wishes to participate with BMG affiliated physicians in ongoing developments in that field, and also wishes to consult with BMG regarding the business aspects of a professional hair restoration practice, including advertising and public relations. PHYSICIAN recognizes that valuable ongoing consultation and training in both the medical and business aspects of a professional hair restoration practice is and will be available at and through BMG.

G. The parties are desirous of entering into a professional and business relationship to provide the consultation and training noted above for the continuing benefit of PHYSICIAN's practice and patients.

H. The parties acknowledge that they are relying upon the factual representations and acknowledgements stated above and would not undertake a professional and business relationship were it not for those representations and acknowledgements.

NOW, THEREFORE, THE PARTIES AGREE:

1. PHYSICIAN hereby retains BMG, and BMG hereby agrees to be retained by PHYSICIAN, on the terms and conditions of this agreement, commencing on the day following the date PHYSICIAN's affiliation with BMG terminates.

Initial _____          3          Initial _____

2.   For the fees described hereinafter, BMG or its designate will be available to provide and will provide, at times reasonable and customary in the consulting industry and upon PHYSICIAN's request, ongoing advice and consultation regarding the business aspects of a professional hair restoration practice, including but not limited to advice and consultation on the following subjects:

A.   Office location

B.   Office layout

C.   Office construction

D.   Leasing and lease terms

E.   Lay staffing

F.   Professional staffing

G.   Training of personnel and patient counselors

H.   Office systems, including patient handling and patient relations

I.   Patient flow management

J.   Advertising and promotion strategies

K.   Advertising layout and design, and the utilization of brochures, videotapes and other advertising media.

L.   Accounting systems, budgeting and planning, general fiscal management, and computer programs

M.   In addition, from time to time and in accordance with PHYSICIAN's legitimate business needs, PHYSICIAN may request that BMG provide additional reasonable consultation services, above and beyond the scope of services set forth above, so as to assist

Initial _____       4       Initial_____

PHYSICIAN in meeting new business circumstances or other special needs.

     3.   In addition, for the fees described hereinafter, PHYSICIAN may consult with BMG (or its designate) and with its affiliated physicians, at times reasonable and customary for BMG (or its designate) or BMG's affiliated physicians, regarding the medical and surgical aspects of a professional hair restoration practice, and may participate with those physicians in BMG's ongoing medical conferences and programs.

     4.   PHYSICIAN acknowledges that it is difficult or impossible to place a true market value on the consultation services and training to be provided by BMG and that, by virtue of BMG's preeminence in the field of hair restoration, in most instances PHYSICIAN would not be able, in the normal course, to fully pay BMG a true value for such services immediately upon the rendition of those services. In recognition of those facts BMG has agreed (a) to set its periodic fees so as not to unduly burden PHYSICIAN's hair restoration practice, and (b) to defer the collection of those fees over no more than a twenty-year period. The parties acknowledge that it is likely that BMG will be called upon to render more services to PHYSICIAN in the early years of this contract than in the later years of the contract.  And, therefore, in the interest of not unduly financially burdening PHYSICIAN's practice during the early years of this contract, BMG

Initial _GML_        5        Initial _JM_

has agreed to charge on a monthly basis the amounts set forth in
Schedules "A" and "B" attached hereto.

5.    This agreement shall be binding for a period of ten
years unless terminated by any of the following ways:

A.    Immediately upon the death or permanent
disability (i.e., the permanent inability to practice surgery
anywhere) of PHYSICIAN.

B.    Upon the permanent termination or suspension of
PHYSICIAN's hair restoration practice.    However, this agreement
shall remain binding upon the parties if PHYSICIAN returns to or
reopens a hair restoration practice after any period of temporary
termination or suspension.

6.    PHYSICIAN hereby grants to BMG an irrevocable option
to renew and extend this contract for an additional ten years.  BMG
may exercise its option by giving PHYSICIAN written notice thereof
more than 90 days prior to the termination of this contract.

7.    During the term of this agreement, PHYSICIAN will
pay BMG or its designate on a monthly basis the amounts set forth
in either Schedule "A" or "B" attached hereto, in accordance with
BMG's notice.

Initial _____        6        Initial _____

Schedule "B" are illegal or unenforceable, this contract shall not terminate but shall continue under the provisions of Schedule "A" attached hereto. Similarly, and so as to protect the legality and enforceability of this agreement, if PHYSICIAN should conduct a hair restoration practice in more than one legal jurisdiction, this agreement shall apply separately to each such jurisdiction without regard to the other as though PHYSICIAN had executed a separate agreement with respect to each legal jurisdiction, so that, for example, by BMG's notices PHYSICIAN might be required to compensate BMG or its designate under Schedule "A" in one jurisdiction and under Schedule "B" in another.

11.  This agreement is assignable by BMG, in whole or in part, to BMG's designate, to any of BMG's affiliated companies or physicians, and, in turn, by and among them.  In the event of such assignment PHYSICIAN shall look only to the designate or assignee to the extent of the assignment.  Likewise, BMG may subcontract for the performance of some or all of this agreement.  BMG may reveal the terms of this agreement to any such assignee, designate or subcontractor.

12.  As a physician, PHYSICIAN is solely responsible for any and all liability or malpractice arising out of the counseling, medical and surgical care rendered by PHYSICIAN, or by PHYSICIAN's employees or agents. PHYSICIAN further agrees to fully indemnify and hold BMG, its affiliates, their employees and agents, harmless

Initial _____        8        Initial _____

from any and all claims, costs, damages, attorney's fees, or
liability which may arise out of or result from the actions of
PHYSICIAN, or PHYSICIAN's employees or agents.  PHYSICIAN shall
promptly notify BMG in writing upon the occurrence of an event
which may lead to such claims, etc., and upon the making of any
such claim by anyone.  Similarly, BMG agrees to indemnify and hold
PHYSICIAN, and PHYSICIAN's employees and agents harmless from any
and all claims, etc., which may arise out of or result from the
actions of BMG, its affiliates, their employees or agents.  In the
event any claim is made or lawsuit filed against BMG, its
affiliate, their employees or agents, by anyone in which it is
contended that PHYSICIAN is or was in any way responsible or at
fault, each party shall have the exclusive right, at its sole
option and discretion, to compromise or settle said claim or
lawsuit with respect its interests, without consulting with or
seeking the approval of the other; for this purpose PHYSICIAN shall
not be deemed to be an agent or employee of BMG.


13.  In the course of its affiliation with BMG under this
agreement PHYSICIAN shall have access to confidential and valuable
information regarding the business aspects of a medical hair
restoration practice, including BMG's policies and procedures,
manuals, advertising formats and strategies, and other non-medical
systems.  The information to be provided by BMG under this
agreement is and shall remain the property of BMG and a trade
secret of BMG.  Nothing in this agreement authorizes PHYSICIAN to

Initial _____                     9                Initial _____

sell, reveal or otherwise transmit such information to anyone at any time except as is solely necessary for the operation of PHYSICIAN's hair restoration practice. Upon termination of this agreement for any reason whatsoever, whether by breach of its agreement or otherwise, PHYSICIAN agrees to maintain all such information in the strictest confidence and to return to BMG all copies, documents, programs, and the like, containing such confidential information.

14. During the term of this agreement and for one year after its termination, PHYSICIAN shall not hire or otherwise solicit for employment any BMG personnel or any of the staff, employees, personnel or contractors affiliated with any BMG parent, designate, subsidiary or affiliate.

15. BMG shall have the right, at any time during normal business hours and from time to time, to inspect all the books, records, tax returns or other financial data maintained by PHYSICIAN or by its bookkeepers or accountants. BMG shall also have the right, at any time and from time to time, to inspect all other business records of PHYSICIAN whether those records are in the possession of PHYSICIAN or any other person or entity. BMG may require PHYSICIAN to transmit copies of records to BMG or its designate, including copies sent by electronic or telephonic means.

Initial _____          10          Initial _____

16.   This agreement may be terminated:

a)   By the written agreement of the parties.

b)   By BMG's determination, in its sole discretion, that PHYSICIAN has failed to maintain standards satisfactory to BMG in PHYSICIAN's practice, policies, and the like, or that the practices, policies, acts or omissions of PHYSICIAN may adversely impact the hair restoration business generally or BMG specifically.

c)   Upon the insolvency of either party.

17.   The parties agree that in the event of a breach or threatened breach of this agreement by PHYSICIAN, BMG will suffer irreparable injury for which monetary damages may not adequately compensate BMG.   The parties further agree that an injunction should issue restraining such breaches or threatened breaches. Such remedies shall be cumulative, and shall be in addition to any other remedies provided by law or equity, and shall be in addition to BMG's right to recover damages.

18.   In the event any part or portion of this agreement is found to be void, invalid or unenforceable, the remaining provisions shall be binding on the parties as though the void, invalid or unenforceable portion were deleted.

19.   No amendment or modification of this agreement shall be effective unless evidenced by a writing signed by the parties.

Initial _____          11          Initial _____

20.   In the event of a breach of this agreement, or any litigation arising hereunder, each party shall pay its own costs, expenses, and attorney's fees.

21.   The parties shall mutually indemnify and hold harmless one another with respect to their acts or omissions and the acts or omissions of their agents and employees.   In addition, PHYSICIAN agrees to maintain adequate medical malpractice and general liability insurance coverages in accordance with BMG's requirements from time to time.   Evidence of such coverages shall be provided to BMG upon request.

22.   PHYSICIAN acknowledges that the terms of this agreement are confidential and may be revealed only to PHYSICIAN's accountant, attorney and spouse, or to satisfy the requirements of medical associations.

23.   This agreement is made under the laws of the state(s) in which PHYSICIAN is practicing at the time of breach and shall be so interpreted.

24.   In the event of any litigation under this agreement, the parties agree that the venue for such litigation shall be Los Angeles County, California.

Initial _____        12        Initial _____

25.  The parties agree to take such actions and to execute such documents as are necessary or incidental to effectuate the terms of this agreement.

26.  Until otherwise indicated in writing, notices hereunder shall be sent to the parties as follows:

A.    BMG:

BOSLEY MEDICAL GROUP
Attn:  L. Lee Bosley, M.D.
8447 Wilshire Boulevard, Penthouse
Beverly Hills, California  90211

B.    PHYSICIAN:

DUNCAN BROWN, M.D.
DUNCAN BROWN, M.D., A MEDICAL CORPORATION
8447 Wilshire Blvd., Suite 400
Beverly Hills, CA  90211

27.  This agreement may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement.

///
///
///
///
///
///
///
///

Initial _____        13        Initial _____

IN WITNESS WHEREOF, the parties have executed this agreement on the first date appearing above.

BOSLEY MEDICAL GROUP

By: _____
Its: _____

DUNCAN BROWN, M.D., A MEDICAL CORPORATION

By: _____
Its: _____

_____
DUNCAN BROWN, M.D.


Approved as to Form and Content:


_____
Attorney For Physician

14

## SCHEDULE "A"

| Contract Year | Monthly Payment |
|---|---|
| One | $10,000 |
| Two | $15,000 |
| Three | $20,000 |
| Four | $30,000 |
| Five | $40,000 |
| Six, and thereafter | $40,000 |

**************************************************************

## SCHEDULE "B"

Monthly Payment:  Twenty Percent (20%) of PHYSICIAN's gross monthly charges.

Initial _____      15      Initial _____